I'm Paul McCarthy appearing for the appellant. This case involves a lease between a company that I'm going to call Thomas, their names are similar, and then a management company called Trading and whether the lease was void or unenforceable. Now according to the district court, the bankruptcy court found the lease void from the outset because of a statement that Whitney, who is Thomas's principal, made a trial. And Whitney conceded that the lease was executed basically because the lender wanted a lease instead of the pre-existing management agreement. Now the district court gets it slightly wrong talking about potential lenders. There weren't potential lenders, there was a real lender called Summit. And so the district, the bankruptcy court, and the district court concluded from that that they really didn't want a lease. Did the bankruptcy court make any findings that the lease had been entered into as a sham transaction for the purpose of deceiving the lender? Is there a finding anywhere in the transcript of the bankruptcy court ruling? I don't remember such a finding, actually. But it would seem to me that if the lender required, the lender wanted the lease, then to state another way, the changing the management agreement to a lease for that self-storage facility is a condition of the loan agreement. And therefore, one would presume that at least Thomas, when it entered into this lease, actually intended a lease because this was what the lender wanted. And Thomas had entered into a contract with the lender for a loan. So the bankruptcy court said, the bankruptcy court didn't explain what, under what principles of California law, the lease agreement was operating under the management agreement, and it said that the lease and the management agreement were conflicting. Is that incorrect? Yes, that's incorrect. The management agreement predated the lease. The management agreement was for about seven pieces of property. Four of those pieces of property were occupied by a storage facility, self-storage facility. The other properties were just miscellaneous properties that the management company was also managing. Now, the 2005 lease only covered those four pieces of property occupied by the storage facility. And the — I'm not a contract attorney, really, but the normal presumption is that you have a later agreement that supersedes an earlier agreement. Well, the bankruptcy court thought that they were not actually operating according to the terms of the lease. They were operating according to the terms of the management agreement. Well, the district court — yes, the district court goes into that. They say that their fuzzy accounting from the time the lease was entered into suggests that they're not treating it as a lease. But really, if the lease is — if the lender is requiring that they enter into the lease, then simply because a contract is not performed doesn't make it unenforceable. The only contracts that ever get to court are contracts that have not been performed in some way or another. The question is whether this lease is enforceable or not, even if they weren't perfectly performing it. There was another issue that the bankruptcy court ruled on, which was that the trustee properly terminated the lease. Yes, it was. And you take issue with that? Well, I think I addressed the — but the termination happened after the trustee took over, obviously. Right. And there was a period — there was a period in — between the filing of the bankruptcy about over a year when the trustee hadn't taken over. And after the trustee took over, there was a period of time — That would get to whatever — Yeah. Relief, turnover. Right. The amount of the turnover. Yes, yes. That would get to the amount of the turnover. So — But you don't really dispute that the trustee had the authority to terminate the lease, assuming he — Yes, actually, I did. He followed the lease and the modification. That — whether the trustee — we did dispute that. Whether the trustee had the authority to terminate the lease depended on — there was a provision in the lease. I don't — I think I briefed this. But the question is whether this termination provision could be the 30 days or six months from — towards the end of the lease. Right. You had a unique argument. Oh. I need — I need argument on that point. I thought I briefed that. I don't exactly remember how that worked. There was quite a bit of detail in there. And I think I did include it in my brief. I'm not prepared to address it any further. Okay. I'm sorry, Your Honor. No, that's fine. I — unless there's any other questions, I have nothing more to say. Okay. Good morning, Your Honors. May it please the Court, my name is Mia Blackler and I'm counsel for Chapter 11 trustee Kyle Everett. Turning to the point discussed concerning the Summit Bank requirement for a lease, there was no testimony other than from Mr. Whitney at trial on that point. No one from the bank testified. What is in the record, however, is the Summit Bank promissory note, which is dated July 27, 2007, two and a half years after this purported lease agreement was entered into. And of note in the note is that the borrower, the debtor, Pacific Thomas Corporation, PTC is how I refer to it, that PTC is borrowing over $8 million from Summit Bank in part on the representation that — accepting the storage tenants, that's a separate issue — that as of July 16, 2007, borrower does not have tenants. So if the — if PTC — So it didn't have a lease. It was representing that it didn't have a lease at that point? It's representing it has no tenants. Allegedly, two and a half years — So did the bankruptcy court or the district court, I guess the bankruptcy court, did it make any findings about this issue that would support a determination that it was a sham transaction? Yes, it made findings. It took into — Okay. So where are the findings in the bankruptcy court, you know, factual findings that the lease was entered into on a pretentious — pretensive basis, pretextual — the word was there somewhere. The court does not — I don't believe that the court decision uses those exact words. Where are some things? Well, then what satisfies those findings in the court's decision? What satisfies the findings? Can you — do you have the decision in front of you? In front of me, no. I mean, it's right behind me. Well, then get it. Yes. And point to us — point out to us where in this decision the judge makes those findings. I recall that, Your Honors, that it takes into account the property operations and the testimony that comes in at trial concerns. Well, can you point to us to the language where it says it was a sham transaction? It does. Again, I argue sham transaction. The decision does not say sham transaction. Okay. So what is the legal basis, then, for the bankruptcy court's determination if it's not a sham transaction? Because for a sham transaction, you have to find under California law that there is evidence that the contract was a pretense undertaken for the purpose of deceiving a third party. So I was looking for that in the bankruptcy court decision, and I didn't see it. This — and this was not a — that sounds like a fraudulent finding. That's California law on what constitutes a sham transaction. This was not — there is no language — I agree with Your Honor that there's no language in the opinion that says sham transaction. The court concludes that the lease was never effective. Okay. And so what's — It's very unappealed, though, isn't it, that it was a sham — isn't that what you're arguing? Our argument has always been — we have always said, the trustee has always said that we believe that it is a sham transaction. But what we argued for in our declaratory relief cause of action is that the lease was null and void. It was not effective. It was not valid. Okay. Under California law, what California law or what legal theory under California law are you relying on? For example, under Civil Code 1689, it talks about when a — when it talks about that 1689B, there's a series of subdivisions where it talks about, for example, illegality or that it would be unfair or affect some type of injustice. And were there findings that the contract was illegal or unfair or affect some kind of injustice? Not specifically stated by the court. What the court finds is it makes a factual inquiry and credibility determinations over whether the lease was effective. Okay. And what under California law would that — so in other words, I'm aware of a sham transaction. I think the district court talked about rescission, and I didn't see any evidence that the lease agreement had been rescinded. So what California legal theory are you relying on for saying that the contract avowedly entered into lease agreement, which was renewed several times, is not valid? It's not valid based on the — based on what happened in the property operations, that the contract never existed. The court found it was not effective. Yes, there's documents that are signed. So you're not aware of any legal theory under California law. You can't cite a case that has a contract as ineffective. Really, I'm trying to find what is the legal rule that's applicable here. I mean, it's fine to say intuitively, well, they operated under a different contract, so let's ignore the lease agreement. But I need to find what the California courts have said is the principle to allow us to disregard what appears to be a validly entered into contract. It's not enough to look at, and I don't think we dispute in our briefing, it's not enough to look at the four corners of the lease agreement that opposing counsel spends time, significant time, saying here's the four corners of the lease and it meets all the elements. We don't dispute that. But, Your Honors, we asked that, and we asked of the bankruptcy court, you have to look at the extrinsic evidence. You have to look at what was going on. The fact that there's a conflicting agreement. And then it has to add up to some sort of legal theory for why the contract is void. And I'm looking for what that legal theory is. I mean, we argue that it is a sham lease. We argue that it doesn't exist. So it's a sham lease, and you need the bankruptcy court findings to support that, as Judge Okuda just pointed out. You can't point us to any. Judge Edelman said that that's your argument on appeal now. It's a sham transaction. What we argue, well, yes, that is what we argue. We argue that the contract is null and void, that it wasn't effective, and that you don't get to the four corners of the lease agreement when it is directly refuted by everything that was going on in this bankruptcy at the time. Did you want to address the other issue about the trustee's termination? The – shortly after the trustee was appointed, he sent out termination notices beginning in February without acknowledging the validity of the lease agreement, and again did so six months later based on what this lease amendment said. And it's our position that it is not commercially reasonable to have a lease extension that doesn't allow for any trigger to be pulled to terminate the lease until five years plus six months afterwards. That would suggest that the lessee could be in default and do whatever it's – you know, not turn over rents, not do whatever it's supposed to do under the lease agreement, and failed – and that the trustee was hamstrung until approximately June of 2015 before he could have terminated the lease. We don't think that's – we think that's a tortured review of the lease amendment. We think that had the lease been effective, it was – it would go under the original terms of the lease, which was 30 days. That trigger was pulled. The debtor insiders, they objected to that. And that's what – at this point, when the action was filed in April of 2013, just a few months after the trustee was at the table, and – Let's assume that we agree that the leases are – can be terminated with or without cause on written notice. So are we looking at a six-month notice period or a 30-day notice period? A 30-day notice period. We look at the original lease, the January 2005 lease is what has the 30 days provision in it. And then there's a 2008 lease, which says six months. And it's a little bit ambiguous that the bankruptcy court didn't make findings about what properties are encompassed by which lease agreements. I believe that what was determined is that the debtor insiders disavowed this 2008 lease. Is that in the bankruptcy court finding? Or where would I find that? It's – I believe it's in the transcript. The 2008 lease was of interest because it only encompassed 1,500 square feet as opposed to the entire self-storage facility, which is what we see in the 2005 lease. So the 2010 extension had the six-month written notice of termination. Correct. So the 2010 extension, which amended the 2005 lease, would be the one that was currently in effect. And so that would mean that there would be a six-month termination period. Well, it depends on how we interpret where thereafter, the word thereafter comes in. If – does it mean that upon the expiration date under this lease in January 2015, only thereafter are you looking at a six-month termination window? Or does the thereafter – and this was part of what was argued in the appellant's briefing. Or does it mean that the lease agreement is cancelable for six months as of the date – excuse me, that you have to have a six-month termination period as of the date of the amendment of January 2010? So the court – did the court say anything about that? It didn't make an interpretation of that phrase. It just said in any event, six months have passed since the trustee's notice, isn't that – is that right? Or am I misremembering? I believe that's what – He only gave a 30-day notice, right? No. No, he gave a six-month notice? Yeah, he gave two notices. In February, he gave a – and this is in our third volume of the record. We submit all the notices. So in February. And again, in August, to have that six-month gap. And so both were given. Okay. Yes. We covered all the bases. Okay. Thank you. All right. Thank you. Thank you. I think you had a few minutes for rebuttal if you wanted to use any. All right. You don't have to. Yes. Yes, thanks. I just – no, I just wanted to point out that the lease had standard termination provisions for cause, like nonpayment of the rent or doing illegal things on the premises and things like that. So if the lessee had done any of those things, it could have been terminated in the middle of the lease. Well, it says that this lease may be terminated with or without cause by written notice. And in 2005, it says 30 days. And in 2010, it says six months, unless you agree that the six-month notice period comes into effect only after the 10-year term expires. Yes, that was – our argument was that the lease was subject to an automatic rollover, but it could be terminated on giving written notice towards the end of the lease term, whether that was six months or 30 days. That was how the termination with notice worked. Now, you could terminate for cause, of course, for other reasons. Okay. Okay. Thanks, Your Honor. Thank you, counsel. We appreciate arguments by counsel, and the matter is submitted at this time.
judges: Paez, Ikuta, Adelman